IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERNESTINE MADELINE ROMERO,

    Plaintiff,

v.                                                                                                       CV 19-0092 JHR

ANDREW SAUL,[1]
Commissioner of Social Security,

    Defendant.

# MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Ernestine Madeline Romero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 18], filed July 1, 2019. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge resolving Ms. Romero's Motion and entering final judgment in this case. [Docs. 4, 7, 8]. For the following reasons, the Court **grants** Ms. Romero's Motion, **reverses** the Commissioner's Final Decision denying her benefits under the Social Security Act, and **remands** this case for further administrative proceedings.

## I.    INTRODUCTION

As Ms. Romero points out in her Motion, this Court relatively recently issued two decisions addressing two of the three issues she raises on appeal from the Commissioner's Final Decision in her case. [*See* Doc. 18, pp. 15, 18-19 (citing *Roybal v. Berryhill*, CV 17-1045 JHR, Doc. 26 (D.N.M. Jan 24, 2019); *Laney v. Berryhill*, CV 17-1062 JHR, Doc. 20 (D.N.M. Feb. 12, 2019))].

---

[1] Commissioner Andrew Saul was automatically substituted as the Defendant in this action pursuant to Fed. R. Civ. P. 25(d) when he was sworn in as the Commissioner of Social Security on June 17, 2019, replacing former Acting Commissioner Nancy Berryhill.

Rather than attempting to distinguish either of those cases in his Response, the Commissioner apparently ignores them and, instead, reasserts arguments that were rejected in those cases and an additional case decided before the Response was filed. *See Figueroa v. Saul*, CV 18-0885 JHR, 2019 WL 3766184 (D.N.M. Aug 9, 2019).[2] Unfortunately for the Commissioner, the Court has only further extended its reasoning in cases decided since then. *See Salazar Trujillo v. Saul*, CV 18-1134 JHR, Doc. 25 (D.N.M. Jan. 21, 2020); *Ammons v. Saul*, CV 18-1212 JHR, Doc. 23 (D.N.M. Mar. 23, 2020); *Lucero v. Saul*, CV 19-0114 JHR, Doc. 25 (D.N.M. March 27, 2020). Of course, the Court did not expect the Commissioner to consider *Salazar Trujillo*, *Ammons*, or *Lucero* in this case since those decisions were issued after his Response was filed on September 30, 2019. [*See* Doc. 21]. Still, as Ms. Romero's briefing demonstrates, *Laney* and *Roybal* were decided well before the Commissioner's extended response deadline, and the Court issued *Figueroa* just under two months before the Response was due. As such, the result in this case should come as no surprise.[3]

As the Court has explained, stare decisis, "[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation[,]" binds the Court to its prior reasoning unless a litigant demonstrates "urgent reasons" to depart from that reasoning in an "exceptional case[.]" BLACK'S LAW DICTIONARY (11th ed. 2019) (quoting William M. Lile et al., Brief Making and the Use of Law Books, 321 (Roger W. Cooley & Charles Lesley

---

[2] The Court notes for the record that the Commissioner's Response was also filed after he was granted a 30-day extension of time to respond to the Motion. [*See* Docs. 19, 20]. Thus, the Commissioner had a total of 90 days from the filing of Ms. Romero's Motion to research and write his Response. The Court views this as more than adequate time to review the two cases identified by Ms. Romero in her Motion (and one more that is available via a Westlaw search) that are directly relevant to the issues decided here. Nonetheless, a further extension was not foreclosed had the Commissioner attempted to demonstrate good cause for one.

[3] Additionally, all six cases cited above followed the reasoning of two others which the Court decided in 2018. *See Crockett v. Berryhill*, CV 17-0955 JHR, 2018 WL 6250602 (D.N.M. Nov. 29, 2018); *Brandenburg v. Berryhill*, CV 17-0507 JB/JHR, Doc. 27 (D.N.M. May 25, 2018), *report and recommendation adopted*, 2018 WL 3062591 (D.N.M. June 21, 2018).

Ames eds., 3d ed. 1914)). The Supreme Court recently reiterated: "Overruling precedent is never a small matter [because] … [a]dherence to precedent is 'a foundation stone of the rule of law.…' [I]t promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Kisor v. Wilkie*, 139 S.Ct. 2400, 2422 (2019) (quoting *Kimble v. Marvel Entertainment, LLC*, 135 S.Ct. 2401, 2409 (2015); *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 798 (2014); and *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). The Commissioner has not convinced the Court to reconsider its prior reasoning here, nor has he demonstrated that this is an exceptional case.

As explained (again) below, having reviewed the Commissioner's arguments and the pertinent portions of the Administrative Record ("*AR*"),[4] the Court must reverse and remand this case to the Administration because: (1) the Administrative Law Judge ("ALJ") who decided Ms. Romero's claim restricted her residual function capacity ("RFC") to understanding, remembering, and carrying out simple instructions and making commensurate work related decisions in a work setting with few changes, but then relied on a job requiring level three reasoning under the General Education Development ("GED") scale in the Dictionary of Occupational Titles ("DOT"); and, (2) the ALJ failed to analyze Ms. Romero's ability to access the jobs he relied on to deny benefits at Step Five where the number of national jobs he relied on is not "significant" as a matter of law. *See* [Doc. 18, pp. 14-19 (citing *Roybal* and *Laney*)]; *see also Lucero*, CV 19-0114 JHR, Doc. 25; *Ammons*, CV 18-1212 JHR, Doc. 23.

---

[4] Documents 12 through 12-1 comprise the sealed Certified Transcript of the Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

## II. PROCEDURAL HISTORY

Ms. Romero applied for supplemental security income benefits under Title XVI of the Social Security Act on January 6, 2016. *See AR* at 173-190. In support of her application Ms. Romero alleged a disability onset date of January 1, 2014 due to fibromyalgia, tendinitis in her left shoulder and neuropathy. *See AR* at 174. The Administration denied Ms. Romero's applications initially and upon reconsideration, so she requested a de novo hearing before an ALJ. *AR* at 68-116.

ALJ Eric Weiss ("the ALJ") held a hearing on Ms. Romero's applications on October 11, 2017, at which Ms. Romero and Vocational Expert ("VE") Diane Weber were questioned by the ALJ and Ms. Romero's attorney. *See AR* at 1-27. Among other things, Ms. Romero testified that she has not worked since 2012, when she began experiencing fatigue, dizziness, pain in her hands and feet, neuropathy and memory problems. *See AR* at 7, 9-11. She also testified that she experiences back problems, shoulder problems, depression and migraines. *See AR* at 9-14. Additionally, Ms. Romero dropped out of high school after her freshman year and never obtained her GED. *AR* at 5. Nonetheless, when questioned by the ALJ, VE Weber testified that a person with Ms. Romero's limited ability is capable of working as an addresser in an office setting, document preparer, table worker, or a toy stuffer. *AR* at 23-24. VE Weber testified that these positions together total 59,900 jobs in the national economy and affirmed that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). *See id.*

Relying on VE Weber's testimony, the ALJ determined that Ms. Romero is not disabled as defined in the Act and issued an unfavorable decision on December 21, 2017. *AR* at 50-67. Ms. Romero submitted a request for review of the ALJ's decision to the Appeals Council on February 7, 2018. *AR* at 171. The Appeals Council denied Ms. Romero's request for review on December

3, 2018, *AR* at 28-33, rendering the ALJ's decision denying benefits the Final Decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Ms. Romero initiated a timely appeal of the Commissioner's Final Decision by filing a Complaint in this Court on February 1, 2019. [*See* Doc. 1].

### III. THE COMMISSIONER'S FINAL DECISION

A claimant seeking social security benefits under the Act must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[5]

At Step One of the sequential evaluation process the ALJ found that Ms. Romero has not engaged in substantial gainful activity since her January 6, 2016, application date. *AR* at 23. At Step Two, the ALJ determined that Ms. Romero

> has the following severe impairments: [l]eft shoulder acromioclavicular joint arthrosis; subacromial impingement; rotator cuff tendinitis/bursitis; superior labrum anterior and posterior tear status post left shoulder arthroscopic distal clavicle extension; subacromial decompression and mini-open subpectoral biceps tenodesis; left foot tarsal tunnel symptoms and plantar fasciitis; cognitive disabilities; and somatic symptom disorder[.]

---

[5] The Tenth Circuit summarized these steps in *Allman v. Colvin,* 813 F.3d 1326, 1333 n. 1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulations.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

*AR* at 55. At Step Three, the ALJ concluded that Ms. Romero's impairments do not meet or medically equal the regulatory "listings." *AR* at 56-57. Ms. Romero does not challenge the ALJ's findings at Steps One through Three on appeal. [*See generally* Docs. 18, 30].

When a claimant does not meet a listed impairment at Step Three the ALJ must determine the extent to which she remains able to work (her RFC) before proceeding to identify past jobs she can still do at Step Four, or other jobs she can do despite her limitations at Step Five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the least an individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1. In this case the ALJ determined that Ms. Romero retains the RFC to:

> Perform sedentary work as defined in 20 C[.]F[.]R[.] 416.967(a) except: [she] may lift up to 10lbs occasionally and push and pull the same. She may walk and stand for two hours per eight-hour workday and sit for six hours per eight-hour workday with normal breaks. [She] may occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds. She may frequently reach, but must avoid more than occasional exposure to extreme cold and unprotected heights. She is able to understand, remember, and carry out simple instructions and make commensurate work related decisions in a work setting with few, if any, changes. [Ms. Romero] may occasionally interact with supervisors, co-workers, and the public. She is able to maintain concentration, persistence, and pace for two hours at a time during the workday with normal breaks.

*AR* at 57-58.

Employing this RFC at Step Four and relying on VE Weber's testimony, the ALJ determined that Ms. Romero's impairments preclude her from returning to her past relevant work as a cashier. *AR* at 62. However, relying again on VE Weber's testimony, the ALJ concluded that Ms. Romero retains the ability to work as a document preparer (DOT # 249.587-018; 47,000 jobs in the national economy), a toy stuffer (DOT # 731.685-014; 4,000 jobs in the national economy); an addressor (DOT # 209.587-010; 6,000 jobs in the national economy), or a table worker (DOT # 739.687-182; 2,900 jobs in the national economy), and that these jobs together exist in

"significant numbers in the national economy." *AR* at 62-63. As, such, the ALJ determined that Ms. Romero does not qualify as disabled under the Act and denied benefits. *Id.*

## IV. LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640 (10th Cir. 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

## V. ANALYSIS

In addition to the Step Five errors requiring remand, Ms. Romero argues that the ALJ failed to properly weigh the opinion of state agency psychological consultative examiner Michael P. Emery, Ph.D., when formulating her RFC [*See* Doc. 18, pp. 9-14]. Because the Court concludes that the ALJ erred as a matter of law by failing to resolve an apparent conflict between Ms. Romero's RFC and one of the jobs identified by the VE, and further erred by failing to support his decision to deny benefits at Step Five with substantial evidence by identifying a significant number of national jobs within Ms. Romero's RFC or analyzing her ability to access the jobs within her RFC, the Court will not address Ms. Romero's alternative RFC-based argument "because [it] may be affected [or rendered moot] by the [Administration]'s treatment of [her] case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 2018 WL 6133387, at *5 (citing *Watkins* for this proposition).

**A. The ALJ failed to identify and resolve an apparent conflict between Ms. Romero's RFC and the GED reasoning level of the document preparer job identified by the VE. If those 47,000 jobs are excluded, there are too few national jobs remaining to be "significant" as a matter of law and meet the Administration's burden at Step Five.**

As noted, the ALJ concluded that Ms. Romero retains the RFC to work as document preparer (DOT # 249.587-018; 47,000 jobs in the national economy),[6] a toy stuffer (DOT # 731.685-014; 4,000 jobs in the national economy),[7] an addresser (DOT # 209.587-010; 6,000 jobs in the national economy),[8] or a table worker (DOT # 739.687-182; 2,900 jobs in the national economy).[9] *AR* at 62-63. Together, these jobs total 59,900 positions in the national economy. However, as Ms. Romero points out, one of these jobs (document preparer) requires level three GED reasoning.[10] [*See* Doc. 18, pp. 14-15]. Relying on *Hackett v. Barnhart*, 395 F.3d 1168, 1174-

---

[6] As set forth in the DOT, a document preparer "[p]repares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices[; c]uts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife[; r]eproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify [a microfilm camera operator] of special handling, such as manual repositioning, during microfilming[; p]repares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material[; and, i]nserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule." DOT # 249.587-018, 1991 WL 672349.

[7] A toy stuffer "[t]ends machine that blows filler into stuffed-toy shells: Inserts precut supporting wire into shell. Places shell opening over stuffing machine nozzle. Depresses pedal to blow cotton or chopped foam rubber filler into shell to impart shape to toy. Places stuffed toy in tote box. Records production. May stuff toys by hand." DOT # 731.685-014, 1991 WL 679811.

[8] An addresser "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing[; m]ay [also] sort mail." DOT # 209.587-010, 1991 WL 671797.

[9] A table worker "[e]xamines squares (tiles) of felt-based linoleum material passing along on conveyor and replaces missing and substandard tiles." DOT # 739.687-182, 1991 WL 680217.

[10] As noted above, "GED" stands for "General Educational Development" and "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT App. C, § III, 191 WL 688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* Pertinent to this case, there are 6 levels of Reasoning Development, with 1 representing the lowest level and 6 representing the highest. *Id.* Level three (3) reasoning requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[; and, to] "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT # 249.587-018, 1991 WL 672349.

1175 (10th Cir. 2005), Ms. Romero argues that the document preparer position must, therefore, be excluded from the ALJ's analysis because it is inconsistent with her RFC's limitation to "understand, remember, and carry out simple instructions and make commensurate work related decisions is a work setting with few, if any, changes." [*See* Doc. 17, pp. 12-14; Doc. 23, pp. 2-3]; *AR* at 58. If these 47,000 jobs are excluded, then there are only 12,900 toy stuffer, addressor, and table worker jobs available to Ms. Romero under the ALJ's reasoning. As Ms. Romero argues, this borderline number of jobs required the ALJ to examine her ability to access those jobs. [*See* Doc. 18, pp. 18-19 (citing *Roybal*, CV 17-1045 JHR, Doc. 20, pp. 7-13)]. Thus, if the document preparer position is excluded as inconsistent with Ms. Romero's RFC, remand is required.

As the Court recently reiterated in the *Ammons* and *Lucero* decisions, in *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999), the Tenth Circuit held "that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." CV 18-1212 JHR, Doc. 23, p. 9; CV 19-0114 JHR, Doc. 25, pp. 9-10. Closely following *Haddock*, the Commissioner issued SSR 00-4p, which discusses the "Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions." SSR 00-4p, 2000 WL 1898704. Pursuant to SSR 00-4p, "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2. "Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within [the ALJ's] duty [to develop the record]." *Haddock*, 196 F.3d at 1091; *see also* SSR 00-4p, 2000 WL 1898704 at *2 ("At the

hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."). This is an "affirmative responsibility" in which the ALJ must both "[a]sk the VE or VS if the evidence he or she has provided conflicts with the information provided in the DOT; and [i]f the VE's or VS's evidence appears to conflict with the DOT, … obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704 at *4.

The Tenth Circuit extended *Haddock* and SSR 00-4p's principles to GED reasoning levels in *Hackett*. *See* 395 F.3d at 1175-1176. There, as here, the claimant argued that her RFC, as formulated by the ALJ below, was inconsistent with jobs requiring level three (3) reasoning. *Id.* The Tenth Circuit agreed, holding that an apparent conflict existed between the claimant's RFC, which found that she "retain[ed] the attention, concentration, persistence and pace levels required for simple and routine work tasks[,]" and jobs requiring level three (3) reasoning. *Id.* In so finding, the court noted that level two (2) reasoning appeared more consistent with the claimant's RFC. *Id.* ("We note that level-two reasoning requires the worker to 'apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations….' This level-two reasoning appears more consistent with Plaintiff's RFC.") (quoting DOT, Vol. II at 1011). The court accordingly reversed and remanded even though the claimant was represented by counsel before the ALJ and could very well have raised the apparent conflict at her hearing, obviating the need for additional litigation. *Id.*

Here, the ALJ failed to comply with SSR 00-4p, and in doing so, he erred. While the ALJ asked VE Weber if her testimony was consistent with the DOT, *see AR* at 24, he failed to identify the apparent conflict between Ms. Romero's RFC, which limited her ability to "understand,

remember, and carry out simple instructions and make commensurate work related decisions in a work setting with few, if any, changes[,]" *AR* at 57-58, and the document preparer position, which requires level three (3) reasoning. *See* DOT # 249.587-018, 1991 WL 672349. As such, the result in this case appears foreordained by the *Hackett* court's conclusion that an RFC limiting the mental demands on a claimant to "simple" tasks "seems inconsistent with the demands of level-three reasoning." *See Hackett*, 395 F.3d at 1176 (citing *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997), which rejected the contention that "a claimant limited to following only simple instructions could engage in the full range of sedentary work because many unskilled jobs in that category require reasoning levels of *two* or higher." (emphasis added)).

In a footnote, the Commissioner attempts to distinguish *Hackett*, arguing that, in that case, the ALJ failed to ask whether the VE's testimony was consistent with the DOT. [*See* Doc. 21, p. 14, n.6]. The Court fails to see the relevance of this argument. Moreover, while "[t]he Commissioner does not agree that there was an apparent unresolved conflict regarding [the document preparer] job[,]" [Doc. 21, p. 14], he also admits that in *Hackett*, "the Tenth Circuit found that a limitation to 'simple and routine work tasks' seemed inconsistent with the demands of level 3 reasoning." [Doc. 21, p. 14, n. 6 (emphasis omitted)]. Here, the Court agrees with Ms. Romero that her limited RFC is similar enough to the *Hackett* claimant's to produce an apparent inconsistency between it and jobs requiring level three reasoning. The ALJ's reliance on VE Weber's testimony does not excuse his failure to resolve the conflict as required by SSR 00-4p. *See* 2000 WL 1898704 at *4; *see also Paulek v. Colvin*, 662 F. App'x 588 (10th Cir. 2016) (unpublished).

Repeating an argument raised in *Lucero*, the Commissioner also observes in his footnote that "[i]n other unpublished decisions, the Tenth Circuit has recognized that GED levels describe

general educational background, not specific mental or skill requirements." [Doc. 21, p. 14, n. 6 (citing *Anderson v. Colvin* , 514 F. App'x 756, 764 (10th Cir. 2013); *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012)]. The Court again fails to see how these cases are relevant, or how they obviate the ALJ's duty under *Haddock*, SSR00-4p, and *Hackett*. All that *Anderson* points out is that "GED does not describe specific mental or skill requirements of a particular job, but rather ***describes the general educational background that makes an individual suitable for the job***, broken into the divisions of Reasoning Development, Mathematical Development and Language Development." *Anderson*, 514 F. App'x at 764 (emphasis added). The Court does not view this statement as contradicting *Hackett* whatsoever, as the GED level required by a job could easily be inconsistent with a claimant's residual ability or educational/vocational profile.[11] Moreover, the Court fails to see how *Mounts* contradicts *Hackett*, as, there, the claimant could not dispute that she "retained the GED to perform the jobs as an appointment clerk, escort vehicle driver, or dispatcher, as testified to by the VE." *Mounts*, 479 F. App'x at 868. Nonetheless, as Ms. Romero argues, *Hackett* is published and therefore controlling, notwithstanding the Tenth Circuit's observations in the unpublished *Anderson* and *Mounts* decisions. [Doc. 30, pp. 4-5].[12]

---

[11] Moreover, *Anderson* is inapposite and unhelpful here because it was decided through the application of harmless error. As the court held: even "[a]ssuming there was a conflict between the VE's testimony and the DOT," there remained two jobs within the claimant's RFC, and she did not dispute that those jobs existed in "significant numbers." *Id.*

[12] Moreover, as was explained in *Ammons* and *Lucero*, this Court has already concluded that level three (3) reasoning is inconsistent with an RFC limiting a claimant to simple tasks. *See* CV 18-1212 JHR, Doc. 23, p. 12; CV 19-0114 JHR, Doc. 25, p. 12. The Court's conclusion was based, in part, on *Paulek*, 662 F. App'x at 594, where the Tenth Circuit relied on the Eighth Circuit's decision in *Lucy v. Chater* (which it also relied on in *Hackett*) for the proposition that "[w]hile we have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions, the Eighth Circuit has held that a limitation to simple instructions is inconsistent with both level-two and level-three reasoning." *Paulek*, 662 F. App'x at 594 (citing *Lucy*, 113 F.3d at 909). In other words, the Tenth Circuit appears to require an explanation by the Administration whenever a claimant who is limited to "simple" tasks is paired with level three (3) jobs. *Id.* Moreover, in *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019), the Fourth Circuit concluded that an apparent conflict existed where the claimant's RFC was limited to only short and simple instructions and the jobs relied on by the Administration required level two (2) reasoning. *Id.* While the Fourth Circuit was careful not to announce a "categorical rule," it made clear that a conflict requiring remand was apparent. *Id.*

Therefore, having found that there was an apparent conflict between Ms. Romero's RFC and the document preparer operator position, and having rejected the Commissioner's arguments, the Court must ignore those 47,000 jobs. The result is that the ALJ identified only 12,900 national jobs within Ms. Romero's RFC.

Anticipating this result, the Commissioner argues that Ms. Romero "could still perform the jobs of toy stuffer, addresser (sic), and table worker. Any apparent inconsistency is, therefore, harmless and does not amount to reversible error." [Doc. 21, p. 15 (citing *Shinseky v. Sanders*, 556 U.S. 396, 409 (2009); *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009)). However, neither case helps him. As did *Ammons* and *Lucero*, this case differs greatly from *Raymond*, where the claimant could not "dispute that 1.34 million rental clerk jobs in the national economy is a legally 'significant' number[.]" *Raymond*, 621 F.3d at 1274. And, as Ms. Romero demonstrates through her briefing, this Court has consistently remanded claims where the number of national jobs is "significantly lower than 152,000" for consideration of the factors stated in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). [*See* Doc. 18, pp. 18-19 (citing *Roybal*, CV 17-1045 JHR, Doc. 26, pp. 7-13)]; *see also, e.g.*, *Figueroa*, 2019 WL 3766184, at *3 (Observing that 152,000 is the lowest number of jobs the Tenth Circuit has determined to be "significant" enough to warrant the application of harmless error and concluding that the 56,000 national jobs at issue in that case were not "significant" enough to warrant the application of harmless error) (citing *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished)); *Lucero*, CV 19-0114 JHR, Doc. 25, pp. 15-21 (same result but applied to 59,000 national jobs); *Ammons*, CV 18-1212 JHR, Doc. 23, pp. 14-17 (56,600 national jobs); *Salazar Trujillo*, CV 18-1134 JHR, Doc. 25, p. 7 n.4 (suggesting that the Administration apply *Trimiar* on remand to a case involving 125,126 national jobs); *Laney*, 2019 WL 586660, at *6 (43,000 jobs); *Roybal*, 2019 WL 318387, at *7 (42,724 jobs); *Crockett*, 2018

WL 6250602, at *6 (6,400 jobs); and *Brandenburg*, CV 17-0507 JB/JHR, Doc. 27, p. 9 (5,200 jobs), *report and recommendation adopted*, 2018 WL 3062591. Therefore, the Court rejects the Commissioner's position that 12,900 national jobs was "significant" as a matter of law.[13] In other words, where, as here, an ALJ identifies fewer than 152,000 national jobs at Step Five, he must consider the *Trimiar* factors to ensure that the claimant can adequately access those jobs.

The Commissioner does not argue that the ALJ considered the *Trimiar* factors when denying benefits in this case (nor could he, since the document preparer jobs conflicts with Ms. Romero's RFC). [*See generally* Doc. 21]. Therefore, because the Court has identified an apparent conflict that eliminates all but 12,900 national jobs, Ms. Romero's case must be remanded so the Administration may engage in the fact-finding required by *Trimiar*. As the Tenth Circuit stated in *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004):

> [u]nless we could hold as a matter of law—and thus not fact, which is beyond our purview—that one hundred is so large a number as to conclusively establish the requisite numerical significance, *Drapeau* [*v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001),] precludes affirmance here just as *Trimiar* does.

---

[13] In pursuing this argument, the Commissioner points out that in *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished), the Tenth Circuit affirmed a case where the VE only identified 11,000 national jobs within the claimant's RFC. However, *Rogers* is distinguishable, for the reasons stated in Ms. Romero's Reply, [*see* Doc. 30, p. 5], and for the reasons discussed by this Court in *Roybal*:

> The Court is not convinced by this citation for two reasons. First, the claimant in *Rogers* did not argue that 11,000 was not a significant number. Thus, the Tenth Circuit's decision did not address the issue. Second, the only Tenth Circuit case the Court is aware of to have addressed *Rogers*, *Evans v. Colvin*, does not rely upon it to establish the minimum number of jobs to be enough for harmless error. *See Evans*, 640 F. App'x at 736 ("As *Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes*[ v. Astrue, 274 F. App'x 675, 684 (10th Cir. 2008)]) to be sufficient so far for application of harmless error."). Put another way, the Commissioner has given this Court no reason to rely on *Rogers* when the Tenth Circuit was unwilling to do so.

CV 17-1045 JHR, Doc, 26, pp. 10-11.

*Id.* at 1144-1145. Accordingly, because the ALJ failed to resolve the apparent conflict between Ms. Romero's RFC and two of the jobs he relied on, and because the remaining number of jobs (12,900) is not "significant" as a matter of law, the Court must remand this case to the Administration to either apply the *Trimiar* factors, or return Ms. Romero's claim to an ALJ to identify a significant number of national jobs she is capable of performing.

> **B. Even if the Court ignored the ALJ's failure to resolve the apparent conflict described above, the total number of jobs he initially identified (59,900) was not "significant" as a matter of law as required to meet the Administration's burden at Step Five absent a proper *Trimiar* analysis. Therefore, remand is required.**

Ms. Romero alternatively argues, and the Court alternatively finds, that even ignoring the ALJ's error in applying SSR 00-4p, the initial number of national jobs he relied on (59,900) was insufficient to meet the Commissioner's Step Five burden without application of the *Trimiar* factors, mandating remand for further analysis. [*See* Doc. 18 p. 19; Doc. 30]. As mentioned above, the Commissioner strenuously resists this conclusion, positing that 12,900 national jobs were more than sufficient to meet the Commissioner's burden when denying benefits at Step Five. [*See* Doc. 21, p. 15]. As in *Lucero* and *Ammons*, the Court is reluctant to expend judicial resources rehashing its prior reasoning. Here, though, the Commissioner appears to have again ignored this Court's prior decisions despite Ms. Romero's citation of several of them in her briefing. [*See* Doc. 18, pp. 15-19 (citing *Laney* and *Roybal*)]. The Commissioner's reluctance to acknowledge the Court's prior decisions renders it necessary to again explain why it would still remand this case for a proper *Trimiar* analysis even if the ALJ had identified 59,900 national jobs that are consistent with Ms. Romero's RFC.

In *Trimiar* the Tenth Circuit explicitly stated that "[an] [administrative law] judge should consider many criteria in determining whether work exists in significant numbers[.]" 966 F.2d at 1330. Specifically, an ALJ should consider: "the level of the claimant's disability; the reliability

of the vocational expert's testimony; the distance the claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the type and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), in turn quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)). While this principle has been tempered over time and does not apply in cases involving over 152,000 national jobs in the Tenth Circuit,[14] *Trimiar* has never been overruled and remains good law. Thus, even if he hadn't erred as described above, the ALJ was still required to apply the *Trimiar* factors to Ms. Romero's case to assess her ability to access the 59,900 national jobs identified by the VE.

As the Court has repeatedly stated, the pertinent regulation does not permit an ALJ to rely on "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s.]" *See* 20 C.F.R. § 416.966(b) ("Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy."). Thus, an ALJ must evaluate each case on its individual merits to determine whether work exists in significant numbers in the national economy as applied to a given claimant's factual circumstances. *Trimiar*, 966 F.2d at 1330. This is because each case, like each claimant, is unique and the "intrinsic" effects of a claimant's impairments may "prevent [her] from *accessing* certain jobs in the local or national economy." *Taskila*, 819 F. 3d at 906.

It is undisputed that the ALJ did not complete a *Trimiar* analysis as to the 59,900 jobs he relied on to deny Ms. Romero benefits in this case. This is clear error, at least so far as the Court

---

[14] Under current Tenth Circuit precedent, an ALJ is not required to perform a *Trimiar* analysis where the number of national jobs at issue is "much larger" than the 650 to 900 regional jobs at issue there. *See Raymond*, 621 F.3d at 1274. Thus, while the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[,]'" *Trimiar*, 966 F.2d at 1330, it has indicated that the Commissioner's final decision should be affirmed as harmless where an ALJ identifies at least 152,000 jobs that are consistent with a claimant's RFC. *See Evans*, 640 F. App'x at 736.

has previously construed present Tenth Circuit precedent. *See Allen*, 357 F.3d at 1145. Therefore, "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, [the Court] cannot properly review this issue[,]" *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished); *see also Allen*, 357 F.3d at 1144, and the Commissioner's final decision must be reversed and remanded for further factual development.

## VI.    <u>CONCLUSION</u>

As in prior cases involving these issues, the Court is bound not only by its present interpretation of binding Tenth Circuit precedent but also by its prior reasoning via the principles of horizontal and vertical stare decisis. *See, e.g.*, *Ammons*, CV 18-1212, Doc. 23, pp. 15-16 (Explaining that under horizontal stare decisis "a court … must adhere to its own prior decisions, unless it finds compelling reasons to overrule itself[,]" and that vertical stare decisis requires a court to strictly follow the decisions of higher courts in its jurisdiction.) (quoting BLACK'S LAW DICTIONARY, 710 (Fourth Pocket Ed. 2011)). "To be sure, stare decisis is 'not an inexorable command.' But any departure from the doctrine demands 'special justification'—something more than 'an argument that the precedent was wrongly decided.'" *Kisor*, 139 S. Ct. at 2422 (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991), and *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014)). The Commissioner has not even attempted to argue this Court's prior decisions were wrongly decided and has not convinced the Court to alter its reasoning here. Therefore, the ALJ was required to explain the apparent inconsistency between Ms. Romero's RFC and the document preparer position and to conduct a significant numbers inquiry in order to support his decision to deny Ms. Romero benefits at Step Five. Because the ALJ failed to do these

things, this Court has no choice but to reverse the Commissioner's Final Decision and remand this case for further proceedings.

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff Ernestine Madeline Romero's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 18], is **GRANTED**, the Commissioner's Final Decision in this case is **REVERSED**, and Ms. Romero's claim is **REMANDED** for further proceedings consistent with this decision.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent